426 F.Supp. 479 (1977)
The UNITED STATES of America, Plaintiff,
v.
MANSION HOUSE CENTER NORTH REDEVELOPMENT COMPANY, a limited partnership, et al., Defendants.
No. 76-20C(4).
United States District Court, E. D. Missouri, E. D.
February 4, 1977.
Joseph B. Moore, Asst. U.S. Atty., U.S. Dept. of Justice, St. Louis, Mo., for plaintiff.
Gene M. Zafft, Rosenblum, Goldenhersh, Silverstein & Zafft, St. Louis, Mo., for receiver.
Edward I. Cutler, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., Edward I. Cutler, Orlando, Fla., for receiver in bankruptcy.
Maurice B. Frank, pro se.
H. Laddie Montague, Jr., David Berger, P.A., Philadelphia, Pa., Jules S. Cohen, Orlando, Fla., for Frank.
No attys. of record for other defendants.

*480 MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon the request of the receiver pendente lite for instructions. Plaintiff brought this suit, as mortgagee of an apartment and motor hotel complex, seeking a variety of relief to protect its interests therein. On September 8, 1976, this Court appointed a receiver pendente lite to take possession of all properties described in the complaint, and all improvements thereon. This included properties owned by defendants Mansion House Center South Redevelopment Company and Mansion House Center South Redevelopment Corporation. Defendant Maurice Frank was a general partner of the Company and the sole owner of the Corporation. The Corporation was a corporate general partner of the Company.
On December 30, 1976, Jules S. Cohen, an attorney acting on behalf of defendant Frank, filed a petition under Chapter XII of the Bankruptcy Act for the Company and a Chapter XI petition on behalf of the Corporation, in Orlando, Florida. On December 31, 1976, Jules Cohen, acting on behalf of defendant Frank, demanded immediate possession of the assets of the Company from the receiver. The receiver was directed to contact defendant Frank. In response, the receiver asserted that defendant Frank was not, on the date of the filing of these petitions, a general partner of the Company. Accordingly, the receiver rejected the demand. The present request for instructions followed.
Initially, the Court notes that it has jurisdiction to determine the question presented. Amoco Pipeline Company v. Admiral Crude Oil Corp., 490 F.2d 114 (10th Cir. 1974). But see, In re M. J. Johnson Aircraft Mfg. Co., 110 F.Supp. 590 (D.C.N.J.1953).
Hearings were held on this and other motions on January 14, 19, and 28, 1977. The evidence adduced at these hearings establishes the following:
The Company is a limited partnership whose general partners were defendant Frank and defendant Corporation. The Corporation had its charter revoked by the state of Missouri in January, 1976 and at the time of the filing of a Chapter XII petition on behalf of the Company, had not had this forfeiture rescinded.
On June 28, 1976, defendant Frank gave notice of his intention to resign as general partner of the Company effective July 31, 1976.
Section 6.2 of the Limited Partnership Agreement provides:
Any individual General Partner shall have the right to retire from the Partnership at the end of any year, upon at least 60 days' written notice to the other General Partners and payment in cash of his indebtedness to the Partnership . . . If, after such retirement, there would not be any individual General Partner, the corporate General Partner shall use its best efforts to arrange for a new General Partner to acquire the interest of the retiring individual General Partner pursuant to Section 6.4. If unsuccessful the corporate General Partners shall first cause the Partnership to liquidate the interest of the retiring partner . . . and thereafter follow the procedure prescribed in Section 6.1(b), and thus terminate the Partnership.
Section 6.1(b) provides in part that if, upon dissolution,
. . . two or more General or Limited Partners who, immediately prior to dissolution, are entitled under Section 5.2 and 5.3 hereof to more than 50% of the profits of the Partnership, signify in writing their desire to continue in a successor partnership, then the assets of the Partnership, subject to its liabilities and to the liability to the retiring partners provided for herein, shall be distributed in kind to the successor partnership thus formed and the successor partnership shall assume such liabilities and shall hold the Partnership and its partners harmless therefrom.
Section 6.4 of the Agreement provides
At any time, the General Partners by unanimous consent may propose that an *481 individual become a new General Partner, either by acquiring all or a portion of the interest in the partnership of either of the individual General Partners or the corporate General Partner. Any new General Partner acquiring all the interest of an individual General Partner must be accepted in writing by Limited Partners holding at least 80% of the aggregate percentage of interest held by the Limited Partners pursuant to Section 5.2. No consent of the Limited Partners is required upon acquisition of less than 50% of an individual General Partner's interest of the corporate General Partners.
Defendant Frank, who was the individual general partner of the Company, and Chairman of the Board and director of the corporate General Partner, the Corporation, attempted to designate a replacement individual General Partner. The replacement, Charles Henderson, however, never acquired the interest of the retiring general partner, defendant Frank, nor was Henderson's appointment ever accepted in writing by the Limited Partners holding at least 80% of the aggregate percentage of interest held by the Limited Partners. Defendant Frank attempted to provide that approval pursuant to Section 7.2 of the Limited Partnership Agreement which provides:
Each of the Limited Partners irrevocably constitutes and appoints the General Partners, or any one of them, jointly and severally, his true and lawful attorney, in his name, place and stead to make, execute, acknowledge and file (i) any and all amendments of the partnership which may be required to be filed by the Partnership under the laws of the State of Missouri upon the substitution of a new Limited Partner . . . or the admission of a new General Partner . . .
It is the Court's conclusion that this provision did not grant defendant Frank a power of attorney for the purposes of providing the Limited Partners' approval of the choice of replacement General Partner. See 3 Am.Jur.2d Agency § 29 in which it is stated:
It is the general rule that a power of attorney must be strictly construed . . the instrument will be held to grant only those powers which are specified. . .
It is clear that this power of attorney related only to ministerial functions and could not be construed to extend to the approval of a General Partner.
The evidence further established that Henderson originally agreed to become the replacement general partner but shortly thereafter and before any documents to that effect were filed, clearly indicated to defendant Frank that he would not accept the position as General Partner. Defendant Frank, nonetheless, caused papers to be filed with the state of Missouri indicating that Henderson was the General Partner of the Limited Partnership. Under § 359.250, R.S.Mo. (1969), a certificate of Limited Partnership is amended when filed in the office of record of deeds. Accordingly, at the time of filing, defendant Frank knew that Henderson refused to accept the position as General Partner. Whether this refusal is termed a refusal of Frank's offer or a resignation, the fact remains that on the effective date of the amendment, that is, the filing with the recorder, Henderson was not a general partner.
Defendant Frank, some time later, accepted Henderson's "resignation" and reappointed himself as General Partner. The document providing for this re-appointment contained Henderson's signature; Frank, however, had signed Henderson's name. The Court has been unable to find any provision in the Agreement which grants Frank power of attorney to sign for a general partner.
The only basis which the Court can perceive which provided Frank with the ability to re-appoint himself as an individual General Partner is Frank's relationship to the Corporation, a corporate General Partner. At that point in time, however, the Corporation had its charter revoked. Apparently, the forfeiture had been rescinded and thus, under the provisions of § 351.540(2), R.S.Mo. (1969) "the restoration *482 of corporate rights and privileges shall have effect from the date of forfeiture . .". Nonetheless, even assuming that the Corporation had the power to appoint Frank as individual general partner, this appointment was not approved by the Limited Partners in the manner required by Section 6.4 of the Agreement. Once again, defendant Frank attempted to provide that approval through exercise of a power of attorney. As stated above, this power did not extend to providing the required approval of the Limited Partnership.
Because of the above, the Court must conclude that Frank did not become a general partner of the Company following his resignation of July 31, 1976. The Limited Partners, pursuant to their powers under Section 6.1(b) of the Agreement, named a new General Partner, upon the failure to the General Partners to properly appoint a replacement after Frank's resignation. Frank challenges the validity of the Partnership so formed. The question before the Court, however, is whether the receiver has in his possession any assets of a partnership in which defendant Frank is a general partner. Accordingly, the validity of the Partnership allegedly formed by the Limited Partners is not at issue herein.
Defendant Frank argues, alternatively, that none of his actions had any legal effect because of a provision in the Regulatory Agreements entered into by the parties herein which provides in part:
Owners shall not without the prior written approval of the Commissioner:
. . . . .
(c) Convey, assign, or transfer . . . the interest of any general partner in a partnership owning the property . . unless the transferees or assignees assume the obligations of this agreement by an instrument in writing satisfactory to the Commissioner.
Defendant Frank argues that his resignation effective July 31, 1976 did not comply with this provision and accordingly he remained a general partner throughout this period.
It is the Court's opinion that this provision in the Regulatory Agreement existed for the sole benefit of plaintiff. From the records in this cause, it appears that plaintiff had knowledge of Frank's resignation as early as June 25, 1975. See letter of same date from Johnny Bullock, Jr., Area Director, Department of Housing and Urban Development, to Mr. Michael J. Weinberger, with carbon copies sent to plaintiff's attorneys herein attached to Defendants' Separate Contentions as to Stipulation of Facts Relative to Plaintiff's Motion for Appointment of Receiver, dated July 27, 1976, stating that
. . . we have just been informed that Mr. Frank intends to resign effective July 31, 1971 as General Partner in the three owner partnerships. We have referred this matter to our counsel for confirmation of this information and for an opinion as to what influence it might have on our authority to approve the appointment of a managing agent.
It is also apparent that plaintiff did not invoke any of its rights under the above-quoted paragraph from the Regulatory Agreement. It is the Court's conclusion that compliance with this paragraph from the Regulatory Agreement has been waived by plaintiff and cannot be asserted herein by defendant Frank. See Power Service Corporation v. Joslin, 175 F.2d 698 (9th Cir. 1949). In that case, the contract in question had a provision which stated "[t]he subcontract shall be subject to the written approval of the Architect-Engineer-Manager [the general contractor] and the Contracting Officer, and shall not be binding until so approved". This provision was not complied with until after the start of construction. The issue presented to the court concerned the date on which a contract was entered into between subcontractors. One subcontractor, referred to as the Corporation, attempted to utilize the non-compliance with the above-quoted provision to support its position. The court stated:
As for the Contracting Officer, although his signature . . . was not appended to the formal contract until September 11, 1944, yet the record shows that he was *483 fully informed of all that transpired, and received copies of most of the correspondence that took place . . . . The clause requiring his written approval was one inserted solely for the protection of the government, which clearly had the right to, and did waive it. Under these circumstances, the Corporation is hardly in a position to claim that this provision, which all parties ignored, operated to postpone its obligation under its bid. Id. at 702 [footnote omitted].
This Court must therefore conclude that plaintiff could, and did, waive that provision in the Regulatory Agreement requiring advance written notice of a conveyance, assignment or transfer of defendant Frank's general partnership interest under the circumstances herein.
As noted above, the Limited Partners named a new General Partner, pursuant to Section 6.1(b) of the Agreement, after Frank's resignation. Defendant Frank argues that the Limited Partners did not comply with the advance written notice provision in the Regulatory Agreement and therefore did not form a valid partnership. The precise issue before the Court, however, is whether the receiver has in his possession any assets of a partnership of which defendant Frank is a General Partner. That issue does not require this Court to determine the propriety of actions taken by the Limited Partners.
Bankruptcy Rule 12-8 provides that "[a] petition may be filed pursuant to Rule 12-6 or 12-7 by all the general partners on behalf of the partnership." The Advisory Committee's Note states that
This does not mean, necessarily, that all of the general partners physically execute the petition. While all must consent to the petition, less than all may execute the petition which would be on behalf of all.
The Court will assume arguendo that rescission of the Corporation's forfeiture of its charter after the filing of the Chapter XII petition had the effect of allowing the Corporation to file this petition, see § 351.540(2), R.S.Mo. (1969). The Court has found, however, that defendant Frank ceased to be a General Partner of that partnership whose assets the receiver holds on July 31, 1976. Under these circumstances, it is clear that the partnership on whose behalf defendant Frank filed the Chapter XII petition is not the partnership whose assets the receiver possesses.
An appropriate order will issue.