UNITED STATES of America, Appellee,

v.

Norman S. ALTMAN; E.J. Ehrlich; Pierre V. Heftler and Hart Perry, General Partners of Mansion House Center Redevelopment Company, a limited partnership, Appellants,

Norman S. Altman; E.J. Ehrlich; Pierre V. Heftler and Hart Perry, General Partners of Mansion House Center North Redevelopment Company, a limited partnership, Appellants,

Norman S. Altman; E.J. Ehrlich; Pierre V. Heftler and Hart Perry, General Partners of Mansion House Center South Redevelopment Company, a limited partnership, Appellants,

Gerald A. Rimmel, receiver and Towers Hotel Corporation, Appellees.

Gerald A. RIMMEL, Receiver of Mansion House Center, Appellee,

v.

MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellant,

Samuel R. Pierce, Secretary of United States Department of Housing and Urban Development and Mansion House Center South Redevelopment Company, Appellees.

MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, a National Banking Association, Appellant,

v.

MANSION HOUSE CENTER SOUTH REDEVELOPMENT COMPANY, a Missouri Limited Partnership, et al., Appellees.

MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellant,

v.

MANSION HOUSE CENTER SOUTH REDEVELOPMENT COMPANY, a Missouri Limited Partnership, Appellee.

UNITED STATES of America, Appellant,

Mansion House Center North Redevelopment Company, a limited partnership; Mansion House Center Redevelopment Company, a limited partnership; Man-

---

sion House Center South Redevelopment Company, a limited partnership,

v.

Gerald A. RIMMEL, Receiver, et al., Appellee.

Towers Hotel Corporation, et al.

UNITED STATES of America, Mansion House Center North Redevelopment Company, a limited partnership; Mansion House Center Redevelopment Company, a limited partnership; Mansion House Center South Redevelopment Company, a limited partnership, et al., Appellants,

v.

Gerald A. RIMMEL, Receiver and Towers Hotel Corporation, et al., Appellees.

Nos. 82–2216, 82–2293, 83–1754 and 83–1645.

United States Court of Appeals, Eighth Circuit.

Submitted July 20, 1984.

Decided Dec. 17, 1984.

Charles A. Siegel, St. Louis, Mo., for appellant.

J. Christopher Kohn, James G. Bruen, Jr., Dept. of Justice, Civil Div., Washington, D.C., for United States.

Mike Clear, Gene M. Zafft and Charles A. Newman, St. Louis, Mo., for appellee.

Before ROSS and FAGG, Circuit Judges, and WOODS,* District Judge.

ROSS, Circuit Judge.

This case consists of four consolidated appeals which evolved from the financial difficulties of the Mansion House Center (MHC) in St. Louis, Missouri. It concerns the district court's[1] actions in attempting to resolve the lawsuits surrounding Mansion House in an equitable fashion. Specifically, it raises issues as to 1) whether the district court erred in enjoining the consummation of settlement agreements executed by various Mansion House litigants, particularly the foreclosure settlement agreement between the United States and the owners of Mansion House, where a Receiver had been appointed to preserve the Mansion House properties; 2) whether the district court erred in denying Mercantile Trust Company's motion for enforcement of its settlement agreement with the United States and the owners of Mansion House; and 3) after consolidation of the various Mansion House cases, whether the district court erred in appointing a Receiver to the consolidated action.

The financial difficulties of MHC date back to 1972. Since that time, multiple and complex lawsuits have resulted, involving the owners of MHC (Owner-Partnerships), the Department of Housing and Urban Development (HUD), the court-appointed Receiver, Mercantile Trust Company (Mercantile), and Towers Hotel Corporation (Towers). Several settlement proposals have surfaced during the pendency of the lawsuits. However, final resolution of the lawsuits has failed to come about.

This court recognizes that the extended delay in resolving the Mansion House litigation has prevented various parties from going forward in their business concerns, and has resulted in considerable expense to the participants,[2] and to the district and circuit courts. We believe that any further delay would be fruitless in effecting a settlement and would accomplish nothing more than to exacerbate the already complex nature of the litigation. We therefore conclude that it is judicially prudent and equitable to attempt to adjudicate the issues of the respective appeals in a way to bring to an end the seemingly endless saga of the already protracted Mansion House litigation.[3]

## I. FACTS AND PROCEDURAL HISTORY

As indicated above, the history of the Mansion House litigation is long and complex. MHC consists of three 28-story towers in downtown St. Louis, Missouri, respectively known as the North, Center, and South Towers. It was originally designed for residential apartments, but today only the North and Center Towers contain residential apartments; the South Tower now operates as a hotel. MHC was constructed with the proceeds of three mortgage loans made in 1964 to Owner-Partnerships.

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable John F. Nangle, Chief United States District Judge for the Eastern District of Missouri.

2. Several parties have alleged, however, that the Owner-Partnerships have in fact benefited from the lengthy litigation of these cases. Specifically, they claim that 1) the Owner-Partnerships have been taking income tax deductions on the accrued but unpaid interest on their mortgage loans now in default, and 2) continued delay permits the Owner-Partnerships to defer recognition of up to $45 million in income.

3. Our concern with the duration of the Mansion House litigation is not intended to reflect derogatorily upon the district court's handling of the Mansion House cases. Indeed, Judge Nangle is to be commended for his diligence in supervising these cases over the years.

These loans totaled approximately $36 million and were insured by HUD pursuant to Section 220 of the National Housing Act, which promotes urban redevelopment. 12 U.S.C. § 1715k (1976).

In 1964, Owner-Partnerships was comprised of three separate limited partnerships, namely, Mansion House Center Redevelopment Company, Mansion House Center North Redevelopment Company, Mansion House Center South Redevelopment Company. Maurice Frank and a corresponding redevelopment company served as general partners of these limited partnerships, with Frank managing the affairs of MHC.

In early 1972 after construction of Mansion House was completed, the Owner-Partnerships defaulted on the mortgages. HUD, as insurer, subsequently paid the claims of the private lenders and became holder of the notes and deeds of trust. At that time, HUD agreed not to exercise its rights to foreclose on MHC in exchange for Owner-Partnerships' promise to make certain capital contributions and other payments.

In 1974, as part solution to the serious financial difficulties of MHC, Owner-Partnerships negotiated a $2,050,000 loan with Mercantile to convert the South Tower of MHC to a hotel. The loan was issued under an agreement executed by Mercantile, HUD and the Owner-Partnerships, which provided that the Mercantile loan was to be repaid out of revenues generated from operation of the South Tower hotel ("the Mercantile South Tower Agreement"). In this agreement, HUD agreed to subordinate its interests to that of Mercantile. Conversion of the South Tower was completed in 1975.

On January 12, 1976, after learning that substantial project funds had been diverted for improper purposes and that the mortgagors were engaging in other acts of mismanagement, the United States (on behalf of HUD) filed suit for recovery of the improperly expended funds (Cause No. 76–20(C)). On April 29, 1976, the United States filed a Motion for Appointment of a Receiver pendente lite to manage, preserve and protect the MHC properties. Thereafter, on June 31, 1976, Maurice Frank resigned as general partner of the three redevelopment companies. On September 8, 1976, upon finding that the mortgagors had indeed violated mortgage agreements and mismanaged the property the district court appointed Gerald A. Rimmel, Esq., as Receiver pendente lite. *United States v. Mansion House Center North Redevelopment Co.*, 419 F.Supp. 85, 87 (E.D.Mo.1976) ("the Receivership action"). Mr. Rimmel has continued as Receiver since that date. At the time of his appointment, the Mercantile loan was in default, and MHC was in danger of complete financial collapse.

Attempting to regain possession and control of the Mansion House properties, Maurice Frank, though retired as general partner of the Ownership companies, subsequently initiated two Chapter XII bankruptcy proceedings as president of those companies.[4] The specifics of those actions are set out in *United States v. Mansion House Center North Redevelopment Co.*, 594 F.2d 653, 654–55 (8th Cir.1979). In those cases, upon requests for instructions from the Receiver, the United States District Court for the Eastern District of Missouri held that the Receiver was not required to surrender the Mansion House assets. *United States v. Mansion House Center North Redevelopment Co.*, 426 F.Supp. 479, 483 (E.D.Mo.1977); *United States v. Mansion House Center*, 455 F.Supp. 434 (E.D.Mo.1978), *aff'd*, 594 F.2d 653 (8th Cir.), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979). The court also enjoined the Frank Group from asserting any ownership interest in the Mansion House properties in any future or pending Chapter XII bankruptcy proceedings, and from interfering with the Receiver's possession or control of those properties. *United States v. Mansion House Center, supra*, 455 F.Supp. at 436.

4. Chapter XII petitions were filed in Orlando, Florida, on December 30, 1976, and in the United States District Court for the Northern District of Illinois on July 11, 1978.

As a result of these bankruptcy proceedings, the United States amended its complaint in the Receivership action, seeking a declaration of the identity of the owners of the property. At that time, a number of the limited partners of the Frank partnerships responded by claiming that they had reconstituted themselves into successor limited partnerships. On December 22, 1978, the successor limited partnerships (herein referred to as "the Owner-Partnerships") were adjudged to be the owners of Mansion House. *United States v. Mansion House Center*, 463 F.Supp. 591, 594 (E.D.Mo.1978), *aff'd*, 605 F.2d 1090 (8th Cir.1979), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980).

As noted above, at the time of the Receiver's appointment, the Mercantile loan for the South Tower conversion was in default. Mercantile contacted Receiver, asserting its claim to the hotel operating revenues. Soon thereafter, Receiver and Mercantile agreed that two-thirds of the monthly payment due to Mercantile under the Mercantile South Tower agreement would be escrowed pending resolution of Mercantile's claim. Receiver proceeded in January of 1978 by filing an action with the district court for declaratory judgment as to whether Mercantile's claim of an equitable lien on the hotel operating revenues was valid and enforceable (Cause No. 78–45C(2) —"the Mercantile action"). Later in September, 1978, Mercantile counterclaimed, demanding payment of all principal and interest due and owing on the South Tower loan.[5]

Receiver's management of the properties steadily improved both the physical and financial condition of MHC. In November, 1978, Receiver executed, with HUD's approval, a long-term lease of the converted South Tower with Towers. The district court overruled objections of the Owner-Partnerships and approved the lease. Owner-Partnerships' appeal of that order to this court was later dismissed as premature. *United States v. Mansion House Center*, No. 79–1582 (8th Cir. Feb. 18, 1981).

In May, 1979, the United States filed three foreclosure actions against Owner-Partnerships for default on its mortgages ("the Foreclosure actions"—Cause Nos. 79–616(C), 79–617(C) and 79–618(C)). Owner-Partnerships immediately commenced bankruptcy proceedings for a real property arrangement under Chapter XII of the Bankruptcy Act in an apparent effort to obtain an automatic stay of the foreclosure actions. The bankruptcy court dismissed the petition for lack of jurisdiction. That decision was upheld by the district court, and later affirmed by this court on appeal. *Matter of Mansion House Center South Redevelopment Co.*, 5 B.R. 826 (E.D.Mo. 1980), *aff'd*, 661 F.2d 724 (8th Cir.1981), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982). Subsequently, Owner-Partnerships and the United States began negotiations for a settlement of the foreclosure actions.

In 1980, Towers filed a lawsuit against Receiver in state court, alleging breach of the long-term lease between Receiver and Towers ("the Towers action"). The case was later removed to federal district court (Cause No. 80–1563(C)), and Receiver counterclaimed alleging wrongful conduct by Towers.

In March, 1981, Owner-Partnerships unsuccessfully moved to terminate the receivership. On December 11, 1981, this court affirmed the district court's denial of the motion to terminate the receivership and remanded the case to consolidate the receivership and foreclosure actions. We also ordered that a hearing be conducted to determine whether a Receiver was warranted in the consolidated action. *United States v. Mansion House Center Redevelopment Co.*, 676 F.2d 705 (8th Cir.1981) (per curiam).

On August 13, 1981, Mercantile renewed its demand for repayment of the Mercantile

---

5. This action remained inactive for approximately two years. As noted *infra*, at page 694, the Mercantile litigation was recently disposed of by this court's August 29, 1984 order, as supplemented by our order of November 2, 1984.

loan to Receiver. Subsequently, on August 25, 1981, Receiver filed a supplemental complaint for declaratory judgment, joining HUD and the Owner-Partnerships as additional parties. Receiver continued to escrow funds from the hotel operating revenues, but also allegedly paid HUD approximately $1,500,000 from the operating revenues. Consequently, Mercantile filed suit in state court against Receiver, HUD, and Owner-Partnerships for declaratory judgment on its claim to operating revenues from the South Tower hotel, and the return of monies allegedly paid to HUD in violation of the Mercantile South Tower agreement. That case was later removed to federal district court (Cause Nos. 82–115C(2) and 82–123C(2)) and on February 26, 1982, was consolidated with Cause No. 78–45C(2) ("the consolidated Mercantile actions").

At this point there were three major lawsuits involving the MHC properties: the HUD foreclosure actions against the Owner-Partnerships; the Towers action against Receiver involving the lease disputes; and the Mercantile action against Receiver, HUD, and Owner-Partnerships for repayment of the South Tower conversion loan. In the spring of 1982, the parties of each respective lawsuit engaged in independent negotiations in an effort to settle each action. In April, 1982, on the eve of trial, Receiver and Towers executed and submitted a settlement agreement to the district court for approval, resolving the Towers Litigation (the "Receiver/Towers settlement agreement"). The agreement provided, in part, that Towers was to solicit bids (not exceeding $1.2 million) and obtain financing for the construction of a banquet facility adjacent to the South Tower. It further provided that $500,000 of the Mansion House Center project funds would be escrowed by the Receiver, and paid to Towers upon the lien-free completion of the banquet facility. The district court notified all Mansion House litigants of the proposed Towers settlement and solicited their response. The United States and the Owner-Partnerships objected to the proposed settlement stating that a settlement in the

foreclosure actions was near at hand, which contemplated the resumption of operation of MHC by the Owner-Partnerships. The Towers settlement, they argued, would require Owner-Partnerships, once in possession, to implement a program they oppose and intend to challenge.

On May 18, 1982, Mercantile, HUD and Owner-Partnerships executed a settlement agreement in the Mercantile litigation, which provided that Mercantile was to be paid $2,400,000 upon the full and final settlement of the foreclosure actions (the "Mercantile settlement agreement"). A few days later the district court ordered Receiver to perform all acts required of him by the agreement. *United States v. Mansion House Center South Redevelopment Co.*, No. 79–0616–C(2) (E.D.Mo. May 24, 1982).

On July 2, 1982, the district court, in a proceeding on the Towers case, was advised by HUD and Owner-Partnerships that a settlement in the foreclosure cases was imminent. The district court, noting the interrelationship of the Mansion House cases, instructed that any such settlement agreement was to be presented to the court for review.

On August 18, 1982, a foreclosure settlement agreement was executed by HUD and the Owner-Partnerships (the "foreclosure settlement agreement"). The agreement essentially provided that the United States would have a nine-month period to sell the entire MHC property at a minimum price of $26,850,000, with the Receiver to be replaced by the Owner-Partnerships' management during this period. If the properties were not sold within the nine-month period, the Owner-Partnerships would be required to make cash payments to HUD during the initial three-year period totaling $3,360,000 and, subsequently, to maintain a debt service schedule providing for full payment of the approximate $52,000,000 indebtedness. The foreclosure settlement agreement further provided for the immediate termination of the Receivership by joint motion, continued opposition to the Towers settlement agreement by HUD and Owner-Part-

nerships, and continued objections to the South Towers lease by Owner-Partnerships.

On August 20, 1982, a copy of the executed foreclosure settlement agreement was presented to the district court. On September 10, 1982, the district court was advised that the parties in the foreclosure actions intended to close the foreclosure settlement agreement on September 15, 1982. Accordingly, the district court notified the Receiver, Towers, United States, and Owner-Partnerships to be present in the court's chambers on September 13, 1982. At the meeting held on that date, the district court advised all parties that it believed it had a right to determine whether the proposed foreclosure settlement agreement should be approved or disapproved. All parties were instructed to appear the following day, September 14, with memoranda briefly stating their positions in that regard. The court also signed an order formally consolidating the foreclosure, Receivership, and Towers cases.

On September 14, 1982, the district court held a hearing in the consolidated action with respect to the foreclosure settlement agreement. At that time, the court expressed its unwillingness to permit piecemeal resolution of the Mansion House cases and stated that the proposed settlement agreement in the foreclosure cases between HUD and Owner-Partnerships was unacceptable for that reason. Accordingly, the court ordered the parties to take no further steps until further order.

The following day, September 15, 1982, the United States and the Owner-Partnerships sought emergency relief from the district court's order by writ of prohibition to this court. Immediate relief was denied that day and the writ itself subsequently was denied after briefing by the parties. *In Re Mansion House Center Redevelopment Co.*, No. 82–2095 (8th Cir. Sept. 15, 1982).

On September 16, 1982, Mercantile filed a motion in district court to compel settlement, seeking enforcement of the Mercantile Settlement Agreement against HUD and the Owner-Partnerships. On September 23, 1982, the district court issued its order and memorandum, denying Mercantile's motion on the grounds that paragraphs 7 and 8 of the Mercantile Agreement explicitly made settlement of the Mercantile litigation contingent upon full and final settlement of the foreclosure actions between HUD and Owner-Partnerships. *United States v. Mansion House Center North*, 95 F.R.D. 515 (E.D.Mo.1982).

In its memorandum the district court also concluded that its injunction of the foreclosure settlement closing at the September 14, 1982 hearing was proper under the Federal Rules of Civil Procedure and principles of equity. The court concluded that Rule 41(a)(1) does not allow the United States and Owner-Partnerships to voluntarily dismiss the foreclosure actions, because that rule is expressly made subject to Rule 66. Rule 41(a)(1) provides that "an action may be dismissed by the plaintiff without order of court * * * by filing a stipulation of dismissal signed by all parties who have appeared in the action." Rule 66 requires a court order for the dismissal of an action wherein a receiver has been appointed. In light of the September 13, 1982 order consolidating the cases, the court concluded that Rule 41(a)(1) would not permit voluntary dismissal because "all parties who have appeared in the action" had not agreed or consented to the proposed settlement. The court believed that the various objections filed by the parties to the several settlement proposals in the Mansion House litigation clearly indicated the interrelatedness of the cases and the importance of treating them as one. Based on that observation, the court concluded that an equitable settlement could not be obtained unless the Mansion House litigation was resolved *in toto*.

The United States and Owner-Partnerships subsequently filed an appeal to this court, No. 82–2216, challenging the district court's authority to enjoin the consummation of the foreclosure settlement agreement under the separation of powers doctrine and Rule 41 of the Federal Rules of

Civil Procedure. Mercantile also filed its appeal from the district court's denial of its motion to compel settlement (No. 82–2293).

Soon thereafter, Owner-Partnerships filed a motion to expedite appeal No. 82–2216. Receiver and Towers responded by filing opposing memoranda, which this court treated as motions to dismiss for want of jurisdiction. On October 29, 1982, all motions were denied and the parties were ordered to brief whether the district court had the authority to approve or disapprove the foreclosure settlement agreement and whether the court was correct in withholding its approval. This court further ordered Receiver and Towers to participate in the appeal as parties appellee. *United States v. Mansion House Center Redevelopment Co.,* No. 82–2216 (8th Cir. Oct. 29, 1982).

On December 27, 1982, Owner-Partnerships presented a consent order to the district court which provided that 1) the Owner-Partnerships would withdraw its objections to the South Tower lease and Towers settlement agreement, and 2) the district court would vacate its order of September 14, 1982, enjoining the United States and the Owner-Partnerships from closing on the foreclosure settlement agreement. The district court declined to approve the consent order despite requests for approval by nearly all of the Mansion House litigants. (Receiver neither approved nor disapproved because it hadn't had sufficient time to review the proposed consent order). The district court expressed its belief that it had a duty to be concerned about the settlement and its effect with respect to the government and taxpayers. The court stated:

> [I]f every one of you stood up and applauded and pleaded that I approve it, I think I would not do it. * * * I have really pondered what—how extensive my own duty is in this entire matter.
>
> *     *     *     *     *     *
>
> [A] major concern * * * has been just that, "What duty, if any, I have in this case to be concerned about the settlement and its effect as far as the general

Government, taxpayers and all things of that sort are concerned?"

*     *     *     *     *     *

> I still suspect that I would have a duty in that area over and above and beyond what you all said.

Transcript of Hearing at 9 and 11, *United States v. Mansion House Center North,* No. 76–20C(2) (Dec. 27, 1982). The district court also expressed its desire for review by the Eighth Circuit on the question of whether the district court has the authority to approve or disapprove the Mansion House settlements, and whether and to what extent the court has a duty to protect taxpayer and government interests in this matter.

On April 4, 1983, the district court, on its own motion and without setting forth any finding of facts, appointed Gerald A. Rimmel as Receiver in the consolidated Mansion House actions. *United States v. Mansion House Center North,* No. 76–20C(2) (E.D.Mo. Apr. 4, 1983). Subsequently, appeals Nos. 83–1645 and 83–1754 were filed by the Owner-Partnerships and United States, respectively, challenging that appointment ("the Receiver appointment appeals").

On June 15, 1983, the Eighth Circuit heard arguments in appeals 82–2216 and 82–2293, addressing the district court's power to enjoin the closing of the foreclosure settlement agreement and the court's denial of Mercantile's motion to enforce the Mercantile settlement agreement. At that hearing, the Owner-Partnerships and United States indicated a willingness to withdraw all objections to the original Towers settlement agreement, as embodied in the proposed consent decree presented to the district court on December 27, 1982. This court subsequently remanded appeal No. 82–2216 for an expedited hearing and definitive ruling on the revised foreclosure settlement agreement now that the "objectionable features" of the first proposed agreement between HUD and the Owner-Partnerships had been eliminated. This court also directed the district court to make

written findings on the separation of powers question advanced by the United States. *United States v. Altman,* No. 82–2216 (8th Cir. June 21, 1983). The Mercantile appeal, No. 82–2293, was held in abeyance, however, because this court believed a settlement acceptable to the district court and Mansion House litigants would be forthcoming, effectively resolving the issues raised in that appeal.

On August 12, 1983, the district court issued a memorandum opinion, rejecting the government's separation of powers argument and finding authority to approve or disapprove the foreclosure settlement agreement under Rules 66 and 41 of the Federal Rules of Civil Procedure. *United States v. Mansion House Center,* No. 76–20C(1) (E.D.Mo. Aug. 12, 1983). The court reasoned that:

> Rules 66 and 41 of the Federal Rules of Civil Procedure expressly provide for dismissal by order of the district court of an action in which a Receiver has been appointed. Congress, through its adoption of the Federal Rules of Civil Procedure expressly delegated to district courts the power to consider and review the dismissal of cases involving a receivership. Therefore, the only potential separation of powers question presented by this case is whether Congress has the authority to delegate this power to the judiciary. In the absence of an argument that Rules 41 and 66 are unconstitutional, there is no separation of powers issue before this court.

Slip op. at 13 (footnote omitted). Having resolved that issue, the court ordered the parties to appear for a hearing on October 24, 1983, for the purpose of addressing what the court perceived to be apparent inadequacies in the substantive provisions of the revised foreclosure settlement agreement. Specifically, the court noted that HUD and the Owner-Partnerships had retained provisions from the original settlement agreement which challenged the va-

lidity of the South Tower lease and objected to the settlement agreement in the Towers litigation. The court further noted that the revised settlement agreement contained obstacles to a sale of MHC to a third party. On October 19, 1983, Owner-Partnerships submitted a revised version of the December 27, 1982 consent order to the district court. The revised consent order essentially provided that the withdrawal of HUD and the Owner-Partnerships' objections to the Towers lease and settlement agreement would not become effective until the "Effective Date" of the Towers settlement agreement. The purpose of this revision was to preserve the Owner-Partnerships' rights to object to the Towers lease and settlement agreement in the event that the contingencies in the Receiver/Towers settlement agreement, i.e., securing of financing for a South Towers banquet facility and obtaining a bid (not to exceed $1.2 million) for construction of that facility, were not satisfied.[6] Subsequently, Towers objected to the revised consent order, claiming that financing institutions would be unwilling to lend money for the banquet facility until the Owner-Partnerships waived their objections to the Towers lease and settlement agreement.

On October 24, 1983, the United States reasserted its position to the court that the scope of the court's review of the foreclosure settlement agreement was strictly limited to a determination of whether or not a settlement had been reached, and that inquiry into the merits of the agreement was inappropriate. At that time Owner-Partnerships also requested approval of the revised consent order presented to the court on October 19, 1983, and relief from the September 14, 1982 injunction. The court declined, however, to give its approval or lift the injunction. The court then proceeded to hear testimony as to the reasonableness of the foreclosure settlement agreement from the Receiver, the appraiser of the Mansion House properties, and an HUD official who had been involved in

---

**6.** Apparently, the Owner-Partnerships were concerned that, under the Receiver/Towers settlement agreement, Towers possessed the authority to declare the agreement null and void in the event that the contingencies could not be satisfied.

negotiating the foreclosure settlement agreement. A detailed summary of that testimony can be found in the district court's March 15, 1984 memorandum, *United States v. Mansion House Center*, No. 76–20C(1), slip op. 2–7 (E.D.Mo. Mar. 15, 1984).

On January 27, 1984, Receiver submitted to the district court a new and different version of the settlement agreement in the Towers litigation (the "Receiver/Towers Second Restated Settlement Agreement"). This revision provided that the upset bid price for construction of the banquet facility was to be raised from $1.2 million to $1.7 million. It also provided that in the event that the lowest acceptable construction bid exceeded $1.7 million, or financing could not be obtained for construction, then Towers would no longer be obligated to build a banquet facility. Towers, however, would continue to have the right to draw down $500,000 of project funds to be applied to energy conversions or other capital additions or structural improvements to the South Tower. Furthermore, in the event that Towers elected not to construct the banquet facility, because of excessive bids or inadequate financing, it was nevertheless obligated to spend $1.8 million on permanent improvements to the South Tower. Towers also agreed to release its claims against Receiver for the rebuilding of defective balconies in the South Tower. Owner-Partnerships filed objections to this revised agreement, stating that the new version was even more objectionable than the prior version.

On March 15, 1984, the district court issued a memorandum opinion stating that the foreclosure settlement agreement would be approved, subject to three conditions, as follows: 1) HUD and the Owner-Partnerships must revise their foreclosure settlement agreement to include a new bidding procedure, which presumably would attract more potential buyers of MHC; 2) HUD must grant priority to the Receiver's indemnity lien on the Mansion House assets; and 3) HUD and the Owner-Partnerships must execute the consent order of October 19, 1983, substituting the language

"Receiver/Towers Second Restated Settlement Agreement" for the language "Towers/Rimmel Settlement Agreement" or "Towers/Rimmel Restated Settlement Agreement" in paragraph 6 of said consent order. This last condition would make the consent order effective on the date on which the Receiver/Towers Second Restated Settlement Agreement is approved by the district court. Effectively, waiver of objections to the South Tower lease by HUD and the Owner-Partnerships and the "Effective Date" of the Receiver/Towers Second Restated Settlement Agreement would occur simultaneously. *See United States v. Mansion House Center*, No. 76–20C(1), slip op. 16–19 (E.D.Mo. Mar. 15, 1984).

Subsequently, this court directed the parties to file supplemental briefs addressing their acceptance or rejection of the three conditions imposed by the district court, and statements as to the status of settlement negotiations. Oral argument for the consolidated appeals, Nos. 82–2216, 82–2293, 83–1645 and 83–1754, was set for July 20, 1984.

At the July 20, 1984 hearing before this court, the parties made it clear that negotiations were at a standstill and that the parties were farther away from reaching a "global settlement" than they were the year before. Specifically, Owner-Partnerships affirmed that it was willing to live up to its commitments, i.e., waiver of its objections to the South Tower lease and Towers settlement agreement and indemnification for the Receiver, but only under the terms of the first Receiver/Towers settlement agreement. Owner-Partnerships totally rejected the Receiver/Towers Second Restated Settlement Agreement on the grounds that it gave Towers a $500,000 "blank check."

Together, the United States and Owner-Partnerships urged this court to rule on the separation of powers issue and to permit the parties to close on the foreclosure settlement agreement. With regard to the Receiver/Towers Second Restated Towers

Settlement Agreement, however, the United States parted from the Owner-Partnerships' position, stating that the government would approve the agreement if the foreclosure settlement agreement were permitted to close. The United States also rejected the district court's condition of a first priority indemnification lien for the Receiver, believing that such lien would render the MHC title unmerchantable. The United States also argued that the appointment of the Receiver in the consolidated Mansion House actions was improper, because there was no requisite dispute between the parties (HUD and the Owner-Partnerships) in the primary foreclosure action. Noting that the cost of delay in this litigation has been substantial to the government, the United States affirmed that it was prepared to proceed to foreclosure in its suits against the Owner-Partnerships, unless the parties soon resolved their differences and were permitted to close on their settlements.

In contrast, Towers and Receiver urged this court to uphold the district court's authority to enjoin the foreclosure settlement agreement, and the district court's March 15, 1984 order conditionally approving that settlement agreement. Towers argued that if the foreclosure settlement agreement was permitted to close without simultaneous resolution of the Towers litigation, then the continuing litigations would become a cloud on the title of MHC, and would frustrate Tower's attempts to secure financing for a banquet facility.[7]

Towers also urged this court to uphold the district court's conditional approval of the Receiver/Towers Second Restated Settlement Agreement. Towers conceded, however, that it would be willing to withdraw its objections to the foreclosure settlement agreement if this court would approve both the Receiver/Towers Second Restated Settlement Agreement and the foreclosure settlement agreement without the three conditions imposed by the district court.

Receiver expressed his concern for adequate indemnification. Specifically, he requested a priority lien on MHC, but agreed that either an indemnity bond or assurance of indemnity by HUD would constitute sufficient protection. He also requested a release from future suit by the Owner-Partnerships, as well as the elimination of paragraphs 26 and 29 in the foreclosure settlement agreement regarding objections to the South Towers lease and Towers settlement agreement. Receiver admitted, however, that execution of Owner-Partnerships' proposed consent order would effectively eliminate paragraphs 26 and 29.

With regard to the Mercantile appeal, Receiver admitted that the money escrowed pending resolution of the Mercantile litigation was available for release, if so ordered. This court subsequently assured Mercantile that the necessary steps would be taken to pay the bank from the escrow fund within a reasonable time.

At the conclusion of arguments, the parties were informed from the bench that if, within the next sixty to ninety days, the four parties came before this court with a global settlement, the district court would be directed to approve it, regardless of its contents.

Pursuant to our comments at the July 20, 1984 hearing, on August 29, 1984, we reversed that part of the district court's September 23, 1982 order which denied Mercantile's motion to compel closing and performance of the Mercantile settlement agreement with HUD and the Owner-Partnerships. Further, we remanded the case, directing the district court to order 1) payment of escrowed funds to Mercantile, 2) compliance with the Mercantile settlement agreement, and 3) dismissal of the Mercantile cases (Nos. 78–45C, 82–0115C and 82–0123C). *Rimmel v. Mercantile Trust Co. National Association*, 742 F.2d 476 (8th Cir.1984).

---

**7.** Towers admitted, however, that it intended to bid at least $26,800,000 for MHC when the property is placed on the market for sale.

With the parties having failed to arrive at a "global settlement," we now address the substantive issues of the respective appeals.

## II. ISSUES

Appeal No. 82–2216 is from the district court's order, dated September 14, 1982, enjoining HUD and the Owner-Partnerships from closing the August 18, 1982 foreclosure settlement agreement. The primary issues raised in this appeal are: 1) whether the decision of HUD to settle the foreclosure litigation is subject to review by the district court (the "separation of powers" issue); 2) notwithstanding the separation of powers issue, whether Rules 41 or 66 of the Federal Rules of Civil Procedure give the district court the right to approve or disapprove the foreclosure settlement agreement; and 3) whether the district court erred in finding the Receiver/Towers Second Restated Settlement Agreement to be a reasonable compromise of the claims in the Towers action.

The issue raised in appeal No. 82–2293 ("the Mercantile appeal") is whether the district court erred in denying Mercantile's motion to compel enforcement of the Mercantile South Tower agreement against the United States and the Owner-Partnerships.

Lastly, the issue raised in appeals 83–1645 and 83–1754 is whether the district court erred in appointing a Receiver to the consolidated foreclosure/Receivership/Towers actions on April 4, 1983.

## III. DISCUSSION

A. *The Foreclosure Settlement Agreement, No. 82–2216.*

As previously noted by this court, "It has long been the rule that a federal court should not pass on constitutional issues when it is not necessary to do so. We should avoid constitutional rulings if the issues may be resolved on other grounds." *Dougherty v. White,* 689 F.2d 142, 144 (8th Cir.1982). *Accord, Blum v. Bacon,* 457 U.S. 132, 137–38, 102 S.Ct. 2355, 2359–60, 72 L.Ed.2d 728 (1982). Therefore, we first proceed to the issue of whether the district court had the authority to approve or disapprove the foreclosure settlement agreement under the Federal Rules of Civil Procedure.

In certain cases, Congress has specifically directed that court approval be required before the consummation of a settlement. *See, e.g.,* FED.R.CIV.P. 23(e) (settlement of class actions); 15 U.S.C. § 16(e) (settlement of antitrust cases). No such congressional provision is present, however, with regard to settlements of foreclosure actions.

In its September 23, 1982 opinion, the district court cited Rule 41(a)(1) and Rule 66, Federal Rules of Civil Procedure, as authority for preventing the United States and the Owner-Partnerships from consummating their foreclosure settlement agreement, which was entered into independently of the collateral Mansion House litigation. Rule 41(a)(1)(ii) permits the dismissal of an action upon the signing of a stipulation by all parties who have appeared in the case.

In light of this court's December 11, 1981 order, instructing the consolidation of the foreclosure litigation with the collateral Receivership and Receiver/Towers actions, the district court interpreted Rule 41(a)(1)(ii) to require the consent of all parties to the collateral litigation (i.e., the Receiver and Towers) before the United States and Owner-Partners could resolve their foreclosure litigation. While these matters have been consolidated, the district court's approach fails to recognize that, even after consolidation, the cases retain much of their independent identity. Consolidation does not merge lawsuits into a single action, "or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933). This court has previously recognized that consolidation does not destroy the independent status of the cases consolidated and does not deprive the litigants of the right to consideration of their individual claims. *DeGraffenreid v. General Motors*

*Assembly Division,* 558 F.2d 480, 486 (8th Cir.1977).

When this court directed the district court to consolidate the foreclosure litigation with the collateral litigation involving the Receiver, it did so for administrative convenience and economy. Consolidation did not, however, prevent the parties from settling their individual claims. In emphasizing their consolidated nature, the district court failed to give proper consideration to the separate character of each individual case. *See, e.g., State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 267 (6th Cir.1979).

■ The district court held that Rule 66 empowered it to enjoin the proposed settlement of the foreclosure litigation. While Rule 66 states that "An action wherein a receiver has been appointed shall not be dismissed except by order of the court," the district court erroneously considered the Receiver in the collateral litigation to be a Receiver in these foreclosure cases. The consolidation of these actions did not have the effect of automatically making the Receiver in the collateral litigation the Receiver in the foreclosure litigation. To hold otherwise would ignore the plain words of this court's December 11, 1981 order, specifically directing the district court to hold a hearing and determine whether a Receiver was warranted in the consolidated foreclosure/Receivership/Towers cases. No such hearing has ever been held, nor factual findings set forth by the district court to support such an appointment in the consolidated cases. Therefore, the April 4, 1983 appointment of the Receiver in the consolidated cases was invalid.[8]

■ Without an effective appointment of a Receiver to the foreclosure action itself, or to the consolidated action, Rule 66 provides no support for the district court's entry of the order enjoining the settlement of the foreclosure litigation. As this court recently stated in *Gardiner v. A.H. Robins Co.,* 747 F.2d 1180 at 1189–1190 (8th Cir. 1984):

In ordinary litigation, that is, lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties. In [*United States v.] City of Miami* [614 F.2d 1322 (5th Cir.1980)], the Fifth Circuit described the settlement process in litigation between private parties as follows:

If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved. * * * "the traditional view is that the judge merely resolves issues submitted to him by the parties ... and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle a litigation."

614 F.2d at 1330 (quoting Judge Wyzanski in *Heddendorf v. Goldfine,* 167 F.Supp. 915, 926 (D.Mass.1958)); *see also United States v. Louisiana,* 527 F.Supp. 509, 512 (E.D.La.1981) (a trial court ordinarily plays little or no part in overseeing the settlement of a lawsuit); *Georgevich v. Strauss,* 96 F.R.D. 192, 197 (M.D.Pa.1982), *appeal dismissed,* 722 F.2d 731 (3d Cir.1983). Courts not only frown on interference by trial judges in parties' settlement negotiations, but also renounce the practice of approving parties' settlement agreements. *See City of Miami,* 614 F.2d at 1330; *Levinson v. Maison Grande, Inc.,* 553 F.Supp. 350, 352 (S.D.Fla.1982).

* * * * * *

Caselaw concerning stipulated dismissals under Rule 41(a)(1)(ii) is clear that the entry of such a stipulation of dismissal is effective automatically and does not require judicial approval. *First National*

---

8. This conclusion is not intended to reflect upon either the appropriateness of the original appointment of Gerald A. Rimmel as Receiver in 1976, or upon his efforts in preserving and managing the Mansion House properties. We agree that the original appointment was necessary to protect HUD's security interest in the property, and acknowledge the Receiver's accomplishments of putting MHC back on a sound operating basis. We disagree, however, that the April 4, 1983 appointment was proper or necessary in the consolidated action.

*Bank v. Marine City, Inc.,* 411 F.2d 674, 677 (3d Cir.1969); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.02[2], .02[5] (2d ed. 1984); *cf. Merit Insurance Co. v. Leatherby Insurance Co.,* 581 F.2d 137, 141 (7th Cir.1978) (voluntary dismissal under Rule 41(a)(1)(i) does not require court approval).[9]

Under the above legal principles, we conclude that the district court did not have the authority under Rules 41(a)(1) and 66 to enjoin the settlement of the foreclosure litigation between the United States and the Owner-Partnerships. We also hold that the appointment of the Receiver to the consolidated action was improper and of no effect. This case is remanded to the district court with directions to permit the consummation of the settlement of the foreclosure litigation as contemplated by those parties.[10]

### B. *Receiver/Towers Second Restated Settlement Agreement.*

■ The Receiver/Towers Second Restated Settlement Agreement is a reasonable compromise of the Towers litigation. We agree with the district court that the Owner-Partnerships' objections, referring to the $500,000 payment to Towers as a "blank check," are unfounded. As noted by the district court:

> The option to draw upon the $500,000.00 for capital improvements other than the banquet facility does not come into play unless Towers fails to receive a bid of less than $1.7 million or to obtain adequate financing. Even if either of these contingencies occurs, Towers' right to draw on the $500,000.00 fund is limited by the terms of * * * the Receiver/Towers [Second Restated Settlement Agreement] to certain categories of capital improvements. This is hardly a "blank check." Furthermore, all of the parties

will benefit from the capital improvements contemplated.

*United States v. Mansion House Center, supra,* No. 76–20C(1), slip op. at 18 (Mar. 15, 1984). The court's analysis in this regard is sound. We therefore remand this matter to the district court with directions to permit the consummation of the Receiver/Towers Second Restated Settlement Agreement.

### C. *Conditions Imposed by District Court.*

■ Although we conclude that both the foreclosure settlement agreement and the Receiver/Towers Second Restated Settlement Agreement may be consummated, we do not approve of the three conditions imposed by the district court. First, we reject the condition requiring HUD and the Owner-Partnerships to revise their foreclosure settlement agreement to include a new bidding procedure so as to attract more potential buyers of MHC. The United States should be permitted to use its own bidding procedure in selling MHC. We believe that the United States will take the necessary steps to assure maximum recovery from the property, and the details of such are best left to the government's discretion.

Second, we reject the district court's holding that the Receiver be granted a priority lien on the Mansion House assets. Though we share the district court's concern with respect to adequately protecting the Receiver from liability stemming from lawsuits filed after the Receivership is terminated, we believe that such a lien would risk placing a cloud on the title of MHC and render it unmerchantable.

Based on the parties' comments on this matter at the July 20, 1984 hearing before this court, we are convinced that adequate protection could be provided without such a lien. For example, the posting of an in-

---

**9.** Rule 41 provides in relevant part:
(a) **Voluntary Dismissal: Effect Thereof.**
(1) *By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court * * * (ii) by filing a stipulation

of dismissal signed by all parties who have appeared in the action.

**10.** Our resolution of this issue obviates the need to reach the separation of powers issue raised by the United States.

demnity bond would give the Receiver considerable protection. Furthermore, the Receiver would have the absolute right in any action filed against him, to join as a third party defendant any other party involved in the Mansion House litigation. However, such protection need not be extended to acts of fraud or willful misconduct. On remand, therefore, we also direct that prior to termination of the Receivership action, the parties to the foreclosure actions must submit a plan of adequate protection for the Receiver which is acceptable to the district court under the guidelines set forth above.

Third, though the district court's proposal that HUD and the Owner-Partnerships execute their October 19, 1983 consent order incorporating the language of the Receiver/Towers Second Restated Settlement Agreement appears to have considerable merit, we have determined that those parties should be permitted to fashion their own settlement without judicially imposed conditions.

### D. *The Mercantile Appeal, No. 82–2293.*

The issues raised by the parties in the Mercantile appeal have been rendered moot by virtue of our August 29, 1984 order, which directed the district court to assure repayment of the Mercantile loan and to dismiss the Mercantile cases. *See Rimmel v. Mercantile Trust Company National Association,* 742 F.2d 476, 477 (8th Cir. 1984), as supplemented by our order of November 2, 1984.

### E. *The Appointment of the Receiver, Nos. 83–1645 & 83–1754.*

With respect to the Receiver appointment appeals, we conclude that the April 4, 1983 appointment of the Receiver in the consolidated action was null and void, for the reasons discussed *supra.*

## IV. CONCLUSION

At oral argument in this matter, we were left with the impression that the passage of time may have caused the parties to the foreclosure litigation to reassess their willingness to abide by the terms of the settle-ment agreement. That settlement, it appears, was modified by proposed consent decrees offered to the district court by the Owner-Partnerships on December 27, 1982, and October 19, 1983. If the parties do not immediately proceed to close on the foreclosure settlement agreement, the district court is directed to set the foreclosure matter for a hearing within one hundred and eighty (180) days of the issuance of this mandate and proceed promptly to judgment.

In conclusion, we reverse the district court's order of September 14, 1982, on the grounds discussed *supra* and remand the case (No. 82–2216) with directions to 1) permit consummation of both the foreclosure settlement agreement and the Receiver/Towers Second Restated Settlement Agreement without the conditions imposed by the district court's order of March 15, 1984, and 2) require adequate protection of the Receiver, except for fraud and willful misconduct, from the parties to the foreclosure actions prior to termination of the Receivership action.

We also reverse the district court's April 4, 1983 appointment of the Receiver in the consolidated action (Nos. 83–1645 and 83–1754). Lastly, the Mercantile appeal (No. 82–2293) has already been dismissed.

It is so ordered.