607 F.Supp. 392 (1985)
UNITED STATES of America, Plaintiff,
v.
MANSION HOUSE CENTER, NORTH REDEVELOPMENT COMPANY, et al., Defendants.
Nos. 76-20C(1); 79-616C(1) to 79-618C(1); 80-1563C(1).
United States District Court, E.D. Missouri, E.D.
April 4, 1985.
*393 Robert B. Chatz, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Frank-Bkptcy, Chicago, Ill., MHC S. Redevelop. Co., MHC Redevelop. Co., and MHC N. Redevelop. Co.
Lawrence Sanders, St. Louis, Mo., Trustee in Bankruptcy.
A. Bruce Schimberg, Sidley & Austin, Chicago, Ill., for Rimmel re bankruptcy in N.Dist.Ill., E.D.
Richard S. Bender, David V. Capes, Gene M. Zafft, Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, Joseph B. Moore, Asst. U.S. Atty. Gen., U.S. Dept. of Justice, St. Louis, Mo., J. Christopher Kohn, David Epstein, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Donald Flint, Area Counsel, Dept. of Housing & Urban Development, Gerald A. Rimmel, Gene M. Zafft, and Merle Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, St. Louis, Mo., for receiver Rimmel.
Eugene Portman, Portman & Portman, St. Louis, Mo., for Tenant Towers Hotel Corp.
James F. Gunn, Gunn & Gunn, Charles Alan Seigel, Stolar, Heitzmann, Eder, Seigel & Harris, St. Louis, Mo., for E.J. Ehrlich, MHC Redevelopment Co., N.S. Altman, P.V. Heftler, H. Perry, MHC N. Tower Redevelopment Corp., MHC S. Tower Redevelopment Corp.
Eugene Portman, Portman & Portman, Robert Hoemeke, Richard A. Wunderlich, John Michael Clear, Michael E. Kohn, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Ben Cotten, G. Lindsay Simmons, William J. Slosberg, Cotten, Day & Doyle, Washington, D.C., for Towers Hotel Corp.

MEMORANDUM
NANGLE, Chief Judge.
This is another chapter in the continuing saga of the Mansion House litigation. On December 17, 1984, the Eighth Circuit Court of Appeals reversed this Court's order dated September 14, 1982, which order had enjoined closing of the August 18, 1982, foreclosure settlement agreement between HUD and the Owner Partnerships. United States v. Altman, 750 F.2d 684 (8th Cir.1984). The effect of the Eighth Circuit's decision was to direct this Court to allow consummation of both the foreclosure settlement agreement and the Receiver/Towers' second restated settlement *394 agreement without the conditions previously imposed by this Court's order of March 15, 1984. The following passage from the Eighth Circuit's opinion foreshadowed the present posture of this case:
At oral argument in this matter, we were left with the impression that the passage of time may have caused the parties to the foreclosure litigation to reassess their willingness to abide by the terms of the settlement agreement. That settlement, it appears, was modified by proposed consent decrees offered to the district court by the owner-partnerships on December 27, 1982, and October 19, 1983. If the parties do not immediately proceed to close on the foreclosure settlement agreement, the district court is directed to set the foreclosure matter for a hearing within one hundred and eighty (180) days of the issuance of this mandate and proceed promptly to judgment.
Altman, at 698.
The relevant events that occurred subsequent to the Eighth Circuit's decision were, as follows: 1) the mandate of the Eighth Circuit was issued on January 10, 1985; 2) pursuant to an amendment, dated January 20, 1985, to the foreclosure settlement agreement between HUD and the Owner Partnerships, the "closing date" under said agreement was modified to mean the "first business day twenty (20) days after there exists no Court Order or judicial impediment enjoining the closing of said agreement"; 3) on January 28, 1985, HUD sent a letter to the Owner Partnerships in which HUD notified the Owner Partnerships that it was not going to close under the foreclosure settlement agreement; 4) on the same date, the Owner Partnerships filed a "motion to compel the closing and performance of settlement agreement and request for hearing with respect thereto"; 5) on January 29, 1985, HUD filed with the Court a motion for a scheduling conference with respect to pre-trial matters in the foreclosure cases; 6) on January 31, 1985, the Owner Partnerships presented HUD with various closing documents under the foreclosure settlement agreement and HUD refused to consummate said agreement; and 7) on February 14, 1985, this Court held a hearing on the Owner Partnerships' motion to compel closing and performance of the foreclosure settlement agreement. Thus, the Owner Partnerships' motion to compel closing and performance of the foreclosure settlement agreement is presently before this Court for decision.
In deciding not to consummate the foreclosure settlement agreement, HUD relied primarily on ¶ 41 of the foreclosure settlement agreement, which provides, as follows:
HUD represents that it has ordered from a title company a title report on the Leasehold Interest. Notwithstanding any other provision of this Agreement, in the event that said title report discloses exceptions, impediments or other clouds on title which, in the opinion of HUD, cause said title to be unmerchantable, this agreement may, at the option of HUD exercised prior to the Closing Date, be declared by HUD to be null and void and held for naught.
The issue presently before this Court is whether HUD properly invoked ¶ 41b in declaring the foreclosure settlement agreement null and void.
HUD exercised ¶ 41 on January 28, 1985, after receiving a title report from Stewart Title Guaranty Company which listed "exceptions" to a prospective title insurance policy on the leasehold interests in the Mansion House Center properties. HUD's "Memorandum in Opposition to the Owner Partnerships' Motion to Compel" made it clear that HUD was relying on only eight (8) of these exceptions in declaring the foreclosure settlement agreement null and void. The eight (8) items consisted of: 1) the pendency of three (3) lawsuits seeking damages for torts and employment discrimination; 2) the pendency of the litigation between the Receiver and Towers Hotel Corporation; 3) the uncertainty of the protection that the Receiver will receive upon termination of the receivership; 4) the pendency of the Receiver's application for approval of the South Tower sublease; 5) *395 the possibility of new investors entering the picture through the South Tower sublease; 6) the possibility that the cash requirements of the settlement agreement will be inadequate at closing; 7) the uncertainty of a "Closing Date"; and 8) the pendency of Mercantile's appeal from this Court's Order concerning interest on the Mercantile settlement. The Owner Partnerships attempted to show, at the February 14, 1985 hearing, that none of these items is a cloud on title or an impediment to merchantable title. In the way of evidence, the Owner Partnerships produced a preliminary title binder from Missouri Title Company to demonstrate that Missouri Title would issue a title insurance policy without the eight (8) exceptions relied on by HUD. In addition, the Owner Partnerships submitted the affidavit of John E. O'Brien, an executive with Missouri Title Company, in which Mr. O'Brien expressed his opinion that the exceptions relied on by HUD do not render the title in question unmerchantable.
The Owner Partnerships' motion to compel closing and performance of the foreclosure settlement agreement is in the nature of an action for specific performance of a settlement agreement. Luker v. Brockmiller, 622 S.W.2d 715 (Mo.App. 1981). This Court has inherent power to specifically enforce a valid settlement agreement. Leon Industries, Inc. v. I.C.N. Pharmaceuticals, 472 F.Supp. 1241, 1242 (E.D.Mo.1979); DeWitt v. Lutes, 581 S.W.2d 941 (Mo.App.1979); Southwestern Bell Telephone Co. v. Roussin, 534 S.W.2d 273 (Mo.App.1976). Missouri law provides that the normal rules of contract construction apply to interpretation of settlement agreements. Press Machinery Corporation v. Smith R.P.M. Corporation, 727 F.2d 781, 784 (8th Cir.1984); Roberts v. Browning, 610 F.2d 528, 533 (8th Cir.1979). Accordingly, the intent of the parties is the touchstone in interpreting the provisions of a settlement agreement. Press Machinery Corporation, at 784; J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. banc 1973).
Paragraph 41 is a "powerhouse" provision, because it rests on the "opinion of HUD" and can be invoked "at the option of HUD". These words are unambiguous and were incorporated into an agreement that was negotiated and drafted by extremely sophisticated parties.
However, this Court agrees with the Owner Partnerships' argument that ¶ 41 was not intended to give HUD total and unreviewable discretion to determine whether the title in question is merchantable. Paragraph 41 is analogous to provisions found in contracts for the sale of real property which provide that the title must be satisfactory to the purchaser or in other contracts which provide that performance is to be to the satisfaction of the promisor. Cummins v. Dixon, 265 S.W.2d 386 (Mo. 1954); Long v. Huffman, 557 S.W.2d 911 (Mo.App.1977). A party relying on such provisions may not act arbitrarily, capriciously or in bad faith. Cummins, 265 S.W.2d at 393. Similarly, it is the opinion of this Court that HUD could not exercise its option under ¶ 41, unless it believed in good faith that the title in question was unmerchantable. This is what the parties intended. Under this standard, the proper focus is on whether HUD's decision that the title in question was unmerchantable was made in good faith. Moreover, this inquiry must be made as of the time HUD decided to exercise ¶ 41. HUD's action must not be judged by hindsight.
This Court rejects the Owner Partnerships' argument that the standard of review should be whether the title in question is in fact and law merchantable. Such an interpretation of ¶ 41 is not supported by its terms. Paragraph 41 does not provide that HUD may declare the agreement null and void only if it correctly decides that the title in question is unmerchantable. The analogy to a contract for the sale of real estate is limited. Paragraph 41 is part of an agreement to settle real estate foreclosure litigation. In its broadest terms, the agreement allows HUD to attempt to sell the leasehold interests during a certain period for a certain price. If said effort *396 fails, a workout agreement will take effect. Paragraph 41 gives HUD the option to act on its own opinion as to the merchantability of the title in question, because HUD is the party that will have to try to sell the property. HUD bargained for and obtained the right to act on its own opinion, not that of Mr. O'Brien or Missouri Title Company. Moreover, ¶ 41, by its terms, allowed HUD to form its opinion on the basis of a title "report", not a final title insurance policy. Under these circumstances, the only limit on HUD's discretion to rely on ¶ 41 was that HUD could not act in bad faith.
This Court finds that HUD's decision was made in good faith and, therefore, the Owner Partnerships' motion to compel closing of the settlement must be denied. In Missouri, "good title", "marketable title" and "merchantable title" are synonymous phrases. Nixon v. Franklin, 289 S.W.2d 82 (Mo.1956). A "merchantable title" is that title which would not only enable the record owner to hold his land but to hold it in peace and, if he wished to sell the land, to be reasonably sure that no flaw or doubt would arise to disturb its market value. Id.; Thomas J. Johnson & Co. v. Mueller, 205 S.W.2d 521 (Mo.1947); Patzman v. Howey, 340 Mo. 11, 100 S.W.2d 851 (1936). This Court need not examine every one of the exceptions relied on by HUD, because this Court is convinced that at least three (3) of them establish that HUD acted in good faith in exercising its ¶ 41 option.
First, even though there is insurance coverage in the three (3) pending damage suits and even though no lis pendens have been filed and no judgment has been rendered, HUD's reliance on the pendency of said suits was not arbitrary or lacking in good faith. The pendency of said suits certainly has an adverse effect on the market value of the property. Moreover, there is the possibility that a judgment could be entered during the nine (9) month period in which HUD attempts to sell the property and thereby become a lien that could discourage prospective buyers or reduce the property's market value. This Court is not persuaded that the Owner Partnerships' authorities support the proposition that a pending damage action does not render title to real estate unmerchantable. See, e.g., Hagemann v. Pinska, 37 S.W.2d 463 (Mo.App.1931).
The second item that justified HUD's decision was the pendency of the litigation between the Receiver and Towers Hotel Corporation. A cursory review of the pleadings in that case indicate that more than damage relief is sought  it seeks declaratory and injunctive relief with respect to the rental of meeting rooms, the rental of parking spaces, and employee parking. Such claims directly affect the property and, therefore, its market value. Moreover, the settlement of said litigation has not been closed. Said settlement calls for, inter alia, certain capital improvements to be made to the South Tower. The uncertainty of the outcome of both the settlement and the suit adversely affect the marketability of the property. Thus, HUD's action was not taken in bad faith.
Similarly, the pendency of the Receiver's application for approval of the South Tower sublease adversely affects the market value of the property. It is another uncertainty that might discourage a reasonable buyer.
In sum, HUD's decision that the title in question was unmerchantable was made in good faith and HUD was entitled to declare the foreclosure settlement agreement null and void. In reaching this conclusion, this Court relies heavily on the fact that HUD was not merely seeking to hold the property itself, but was seeking a title that it could attempt to sell during the nine (9) month period called for by the foreclosure settlement agreement. Accordingly, the Owner Partnerships' motion to compel closing of the foreclosure settlement agreement is denied. A scheduling conference shall be set to discuss proceeding with the foreclosure cases.