774 F.2d 279
 George A. RIMMEL, Receiver of Mansion House Center, Appellee,
v.
MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellant,
v.
Samuel R. PIERCE; Mansion House Center South Redevelopment
Co., Appellees.
MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellant,
v.
MANSION HOUSE CENTER SOUTH REDEVELOPMENT CO., Appellee.
MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellant,
v.
MANSION HOUSE CENTER SOUTH REDEVELOPMENT CO., Appellee.
 No. 85-1129.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1985.
Decided Sept. 30, 1985.
 
 Charles Newman, St. Louis, Mo., for appellant.
 J. Christopher Kohn, Washington, D.C., and David Capes, St. Louis, Mo., for appellee.
 Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* District Judge.
 ROSS, Circuit Judge.
 
 
 1
 The Mansion House dispute revisits this court with yet another issue for resolution. This time Mercantile Trust Company (Mercantile) appeals an order of the district court denying it interest on funds held by a court-appointed receiver (Receiver) and from the Department of Housing and Urban Development (HUD). For reasons hereinafter stated, we reverse the district court order as it applies to the Receiver, affirm the order as it applies to HUD and remand for further proceedings consistent with this opinion.
 
 FACTS
 
 2
 The factual history of this case is convoluted, involving numerous disputes over financial interests in the Mansion House Center (MHC) located in St. Louis, Missouri. Because this court has previously set forth an extensive factual background of these disputes,[1] we set forth only those facts pertinent to this decision.
 
 
 3
 In 1974, as part solution to the financial difficulties of MHC, Owner-Partnerships negotiated a $2,050,000 loan with Mercantile to convert the South Tower of MHC to a hotel. Under the loan agreement, Mercantile was to be repaid out of hotel revenues. In 1976, following acts of mismanagement by Owner-Partnerships, Receiver was appointed to manage and preserve the MHC properties. At the time of Receiver's appointment, the $2,050,000 loan with Mercantile was in default. Mercantile contacted Receiver asserting its claim to the hotel operating revenues. Soon thereafter, Receiver and Mercantile agreed that two-thirds of the monthly payment due to Mercantile would be escrowed pending resolution of Mercantile's claim.
 
 
 4
 In 1981, Mercantile demanded repayment of the Mercantile loan and reasserted its claim to the hotel operating revenues. Receiver thereafter filed a declaratory judgment seeking a judicial determination of these claims. Receiver continued to escrow funds from the hotel operating revenues, but also allegedly paid HUD approximately $1,500,000 from these funds. Consequently, Mercantile filed suit for declaratory judgment on its claim to the operating revenues of the hotel and the return of monies allegedly paid to HUD in violation of their prior agreement.
 
 
 5
 On May 18, 1982, Mercantile, HUD and Owner-Partnerships executed a settlement agreement (Mercantile settlement agreement),[2] which provided that Mercantile was to be paid $2,400,000 in principal, coming from both Receiver's escrow account and HUD. The Mercantile settlement agreement also provided that both Receiver and HUD would pay interest, but the parties dispute the length of time interest was to accrue for the benefit of Mercantile.
 
 DISCUSSION
 1. Interest on Receiver Principal
 
 6
 The Mercantile settlement agreement in paragraph 2 provided when interest was to be paid to Mercantile by Receiver:
 
 
 7
 1. On or before June 1, 1982, Receiver shall deposit with the Clerk, into an interest-bearing account, all amounts escrowed to said date, including interest earned or accrued thereon, arising from the escrow of funds by the Receiver pending the adjudication of the Mercantile Litigation. Said amount presently exceeds $1,450,000.00.[3] (Emphasis added.)
 
 
 8
 The Mercantile settlement agreement also provided in paragraph 2a for the distribution of Receiver principal and interest:
 
 
 9
 2. On the Closing Date, if the settlement set forth in paragraph 7(ii) hereof is consummated,[4] Mercantile shall be paid the following:
 
 
 10
 a. The Clerk shall distribute to Mercantile all amounts then on deposit with the Clerk under Paragraph 1 above including interest earned or accrued thereon; * * *. (Emphasis added.)
 
 
 11
 Pursuant to paragraph 2a of the Mercantile settlement agreement, the clerk was to distribute "all amounts then on deposit * * * including interest," and was to make the distribution "On the Closing Date" if the settlement set forth in paragraph 7(ii) [hereinafter the foreclosure litigation settlement] was consummated. The "Closing Date" was originally set for July 7, 1982, but was twice extended by letter agreement ending finally on September 15, 1982. The foreclosure litigation settlement was scheduled to be consummated on September 15, 1982. However, on September 14, 1982, the district court enjoined the foreclosure litigation settlement. On September 16, 1982, Mercantile filed a motion in district court to compel settlement of the Mercantile settlement agreement against HUD and Owner-Partnerships. On September 23, 1982, the district court issued an order denying Mercantile's motion on grounds that the Mercantile settlement agreement explicitly made settlement of the Mercantile litigation contingent upon full and final settlement of the foreclosure litigation settlement.
 
 
 12
 On August 29, 1984, we reversed that portion of the district court's order which denied Mercantile's motion to compel settlement of the Mercantile settlement agreement. Rimmel v. Mercantile Trust Co., 742 F.2d 476, 477 (8th Cir.1984). We stated that it would be "inequitable to require [Mercantile] to remain hostage to the ongoing and complex disputes of the other Mansion House litigants." Id. We then remanded the case to the district court with the following instructions:
 
 
 13
 [W]e remand the case for disposition as follows:
 
 
 14
 1) all funds escrowed by Receiver * * * for the express purpose of resolving the Mercantile litigation, including those funds within the Registry of the Court, are to be paid to Mercantile * * * forthwith;
 
 
 15
 2) the parties in the Mercantile action should be instructed to fully comply with the terms of the Mercantile settlement agreement; and
 
 
 16
 3) the court shall dismiss Causes Nos. 78-45C, 82-0115C and 82-0123C (the Mercantile cases) in accordance with the Mercantile settlement agreement upon Mercantile's receipt of the amounts owing.
 
 
 17
 Id.
 
 
 18
 On September 20, 1984, Mercantile requested an order clarifying the amount of interest to be paid under this court's order of August 29, 1984. In a letter to this court, Mercantile stated its interpretation of paragraph 2a of the Mercantile settlement agreement and its understanding of the parties' agreement:
 
 
 19
 [W]e commenced discussions with [Receiver] and have reached an agreement pursuant to paragraph 2.a. of the [Mercantile settlement agreement] as to the amount of interest to be paid on the [Receiver] principal from May 1982 through and including the payment date.
 
 
 20
 Letter from Charles A. Newman to Robert D. St. Vrain (September 20, 1984) (emphasis added).
 
 
 21
 On October 6, 1984, Receiver responded to Mercantile's letter and similarly conveyed that the parties had reached an "understanding" as to the interpretation to be given paragraph 2a of the Mercantile settlement agreement. Receiver, however, requested specific instructions from this court with respect to the payment of interest. Receiver's letter stated in pertinent part:
 
 
 22
 Based upon * * * the Receiver's obligation under the [Mercantile settlement agreement] as set forth [in paragraphs 1 and 2a], the Receiver and Mercantile reached an understanding that Mercantile would be entitled to interest on the Receiver's principal obligation ($1,471,186.64) from the date of escrow with the Clerk of the District Court through the payment date. The amount of interest would not exceed the interest earned on the Receiver's principal obligation while it was on deposit with the Clerk pursuant to Paragraph 1 of the [Mercantile settlement agreement].
 
 
 23
 Letter from David V. Capes to Robert D. St. Vrain (October 6, 1984) (emphasis added).
 
 
 24
 On November 12, 1984, we ruled on the request made by Receiver stating:
 
 
 25
 In issuing its August 29, 1984 order, this court merely intended that the Mercantile settlement agreement should be enforced according to the terms set forth therein. We did not, nor do we at this time, render any opinion as to whether interest is due and owing on the principal amounts beyond those terms set forth in the agreement. This court refuses to sit as a trial court to decide, de novo, an issue now raised for the first time by [Receiver]. That issue can properly be raised in a related proceeding before the district court. (Emphasis added.)
 
 
 26
 Rimmel v. Mercantile Trust Co., No. 82-2293 (8th Cir. Nov. 12, 1984).
 
 
 27
 Upon remand, the district court ruled that neither the terms of the Mercantile settlement agreement nor the subsequent correspondence of the parties provided a basis for awarding the interest sought by Mercantile. The district court found that Receiver's understanding of what the parties intended by the Mercantile settlement agreement was irrelevant because (1) the terms of the Mercantile settlement agreement were not ambiguous; and (2) Receiver was not a signatory to the Mercantile settlement agreement. The district court also found that, had this court intended for Mercantile to receive interest through the payment date for equitable reasons, this court would have expressly so ordered. Accordingly, the district court found that Receiver was required to pay interest only until the closing date.
 
 
 28
 Paragraph 1 of the Mercantile settlement agreement makes it clear that funds held by Receiver were to be deposited into an "interest-bearing account" under the control of the clerk of the district court. Paragraph 1 of the Mercantile settlement agreement contains no limitation on the amount of interest or length of time such interest would accrue in the "interest-bearing account."
 
 
 29
 Paragraph 2a of the Mercantile settlement agreement instructs the clerk of the district court when to distribute the funds, namely, "On the Closing Date." Moreover, paragraph 2a directs the clerk to distribute to Mercantile "all amounts then on deposit * * * including interest earned or accrued thereon." In other words, the clerk of the district court was directed to distribute the full amount on deposit in the interest bearing account including "all" interest. Paragraph 2a of the Mercantile settlement agreement does not limit the amount of interest to be paid at the time of distribution but, as stated previously, merely instructs the clerk of the district court when to make the distribution, that is, "On the Closing Date."
 
 
 30
 We find that the words "On the Closing Date" do not limit the amount of interest to be paid by Receiver. The written documents, the actions of the parties and the surrounding circumstances manifest an intent to have interest accrue in the interest bearing account for the benefit of Mercantile until actual payment. See Press Machinery Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 785 (8th Cir.1984); Goldberg v. Charlie's Chevrolet, Inc., 672 S.W.2d 177, 179 (Mo.App.1984). It is beyond question that Mercantile, a commercial money lender, intended to collect interest on money that was essentially on loan to Receiver. It is also clear that, but for the district court order the day before the closing date, an order ultimately reversed by this court, the Mercantile settlement agreement would have been consummated by the closing date and this litigation rendered unnecessary. Under these circumstances, we believe Mercantile is entitled to the interest sought from Receiver.
 
 2. Interest on HUD Principal
 
 31
 The Mercantile settlement agreement provided for HUD to make the following payment:
 
 
 32
 b. HUD shall pay to Mercantile:
 
 
 33
 (i) [the HUD principal of $928,813.36 ($2,400,000--$1,471,186.64) ]; and
 
 
 34
 (ii) imputed interest, commencing on May 28, 1982, through the Closing Date[5] on the sum set forth in (i) above at the rate payable on Twenty-six Weeks U.S. Treasury Bills on May 28, 1982.
 
 
 35
 After an exchange of correspondence, Mercantile, HUD and Owner-Partnerships executed an agreement on October 24, 1983, which provided:
 
 
 36
 1. The HUD principal balance will remain fixed at $928,813.36.
 
 
 37
 2. Interest on the HUD principal balance will be paid at the rate of 8.45% from September 15, 1982 until September 14, 1983;
 
 
 38
 3. Thereafter the interest rate will fluctuate on a monthly basis payable at the prevailing rate for 26 week T-bills in effect on the 15th day of each month (or the next business day thereafter) for the months of October and November; * * *.
 
 
 39
 Under the Mercantile settlement agreement, the interest to be paid by HUD was contractually limited to an amount accruing "through the Closing Date." Unlike the Mercantile settlement agreement provision relating to Receiver, the provision of the Mercantile settlement agreement pertaining to HUD does not direct the clerk of the district court to make a distribution nor does it imply that interest accrues until actual payment of the principal. To the contrary, as to HUD, the Mercantile settlement agreement states plainly that interest would accrue only "through the Closing Date". Although Mercantile and HUD amended the Mercantile settlement agreement by letter agreement to provide for interest payments beyond the closing date, this amendment also limited the amount and length of time interest would accrue. The letter agreement stated unequivocally that interest would be paid at a fixed rate "until September 14, 1983" and at a variable rate "for the months of October and November [of 1983]."
 
 
 40
 It is well settled that interest on claims against the United States cannot be recovered absent a constitutional requirement, a specific contractual or statutory provision or express consent by Congress. United States v. Louisiana, 446 U.S. 253, 264-65, 100 S.Ct. 1618, 1625-26, 64 L.Ed.2d 196 (1980); Arvin v. United States, 742 F.2d 1301, 1302 (11th Cir.1984). Stated differently, unless the United States expressly waives its sovereign immunity, interest on a claim or judgment is not allowed. United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 658-59, 67 S.Ct. 601, 603-04, 91 L.Ed. 577 (1947); Arvin v. United States, supra. In the instant case, it is undisputed that the contract between the parties provided for interest to Mercantile only through November 30, 1983, that there was no constitutional requirement to pay interest, and that no express consent was given by Congress to provide for interest beyond that date.
 
 
 41
 Mercantile argues, however, that an express waiver of sovereign immunity is provided by statute under 28 U.S.C. Sec. 1961.[6] In Holly v. Chasen, 639 F.2d 795 (D.C.Cir.1981) the Court of Appeals for the District of Columbia Circuit considered and rejected this argument, finding that 28 U.S.C. Sec. 1961 was not intended to automatically confer interest on all civil judgments against the United States. Id. at 797-98.
 
 
 42
 Subsequent to Holly, Congress amended 28 U.S.C. Sec. 1961 in the Federal Courts Improvement Act, Pub.L. No. 97-164, Sec. 302(a), 96 Stat. 25 (1982). These amendments did not, however, create the express waiver of sovereign immunity under 28 U.S.C. Sec. 1961 as required by Holly. Arvin v. United States, supra, 742 F.2d at 1304; Knights of Ku Klux Klan v. E. Baton Rouge Parish, 735 F.2d 895, 902 n. 8 (5th Cir.1984).
 
 
 43
 Because appellants have stated no authority to award interest, we deny Mercantile interest on the HUD principal beyond November 30, 1983 and, accordingly, affirm that portion of the district court opinion.
 
 
 44
 Reversed in part, affirmed in part, and remanded for further proceedings consistent with the views expressed in this opinion.
 
 
 
 *
 The HONORABLE FRED J. NICHOL, Senior Judge, United States District Court for the District of South Dakota, sitting by designation
 
 
 [1]
 See United States v. Altman, 750 F.2d 684, 686-95 (8th Cir.1984)
 
 
 [2]
 Receiver was not a party to this agreement but was ordered by the district court on May 4, 1982, to comply with its terms. This court also ordered the Receiver to comply with the terms of this agreement. Rimmel v. Mercantile Trust Co., 742 F.2d 476, 477 (8th Cir.1984)
 
 
 [3]
 It was later determined that the actual Receiver principal amount was $1,471,186.64
 
 
 [4]
 The "settlement" referred to here is a settlement agreement executed by Owner-Partnerships and HUD in a related Mansion House dispute
 
 
 [5]
 As stated previously, the closing date was extended twice by agreement of the parties ending on September 15, 1982
 
 
 [6]
 28 U.S.C. Sec. 1961 provides in part:
 (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
 * * *
 (2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit, at the rate provided in subsection (a) and as provided in subsection (b).
 (3) Interest shall be allowed, computed, and paid on judgments of the United States Claims Court only as provided in paragraph (1) of this subsection or in any other provision of law.
 (4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.