UNITED STATES of America, Appellee,

v.

MANSION HOUSE CENTER REDEVEL-
OPMENT COMPANY, a limited part-
nership, and MH Center Tower Rede-
velopment Corporation, a corporation,
and Norman S. Altman, E.J. Ehrlich,
Pierre V. Heftler and Hart Perry, Gen-
eral Partners of Mansion House Center
Redevelopment Company, a limited
partnership, and Mansion House Cen-
ter Redevelopment Corporation, a cor-
poration, and Maurice B. Frank, Gener-
al Partners of Mansion House Center
Redevelopment Company, a limited
partnership, Appellants.

UNITED STATES of America, Appellee,

v.

MANSION HOUSE CENTER NORTH
REDEVELOPMENT COMPANY, a lim-
ited partnership; MH Center North
Tower Redevelopment Corporation, a
corporation, and Norman S. Altman,
E.J. Ehrlich, Pierre V. Heftler, Hart
Perry, General Partners of Mansion
House Center North Redevelopment
Co., a limited partnership; Mansion
House Center North Redevelopment
Corporation, a corporation, and Frank,
Maurice B., General Partners of Man-
sion House Center North Redevelop-
ment Co., a limited partnership, Appel-
lants.

UNITED STATES of America, Appellee,

v.

MANSION HOUSE CENTER SOUTH RE-
DEVELOPMENT COMPANY, et al and
Mansion House Center South Tower
Redevelopment Corporation, a corpora-
tion, and Norman S. Altman, E.J. Ehr-
lich, Pierre V. Heftler and Hart Perry,
General Partners of Mansion House
Center South Redevelopment Co., a
limited partnership, and Mansion
House Center South Redevelopment
Corporation, a corporation, and Mau-
rice B. Frank, General Partners of
Mansion House Center South Redevel-
opment Co., Appellants.

No. 85–2481.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1986.

Decided July 17, 1986.

Rehearing Denied Aug. 18, 1986.

Charles Alan Seigel, St. Louis, Mo., for
appellants.

J. Christopher Kohn, James G. Bruen, Jr.,
Dept. of Justice, Washington, D.C., for ap-
pellee.

Before ROSS, McMILLIAN and BOW-
MAN, Circuit Judges.

ROSS, Circuit Judge.

In this appeal we are asked to determine
whether the Department of Housing and
Urban Development (HUD) acted within its

contractual rights when it declared the settlement agreement between itself and the owners of the Mansion House Center (Owner-Partnerships) null and void. The district court held that HUD had acted within its contractual rights. 607 F.Supp. 392. We affirm.

## FACTS

The factual history of the Mansion House litigation is set forth in *United States v. Altman*, 750 F.2d 684, 686–95 (8th Cir.1984). In brief, the litigation involves three 28–story towers in downtown St. Louis which were constructed as residential apartments. The project was financed by approximately $36 million worth of loans from private lenders. These loans were insured by HUD. When Owner-Partnerships defaulted on these loans in 1972, HUD had to pay the private lenders. In return, the private lenders assigned their notes, deeds of trust, and security agreements to HUD.

In subsequent years, matters became more complex and several lawsuits arose. A receiver was appointed in response to Owner-Partnerships' mismanagement of the project, and the South Tower was converted to a hotel with funds loaned by Mercantile Trust Company (Mercantile). The hotel was operated by Towers Hotel Corporation (Towers) under a long-term lease.

In May of 1979, HUD filed a foreclosure action in response to Owner-Partnerships' default on its mortgage payments. Subsequently, the parties attempted to settle the matter. On August 18, 1982, they executed a settlement agreement which

essentially provided that the United States would have a nine-month period to sell the entire MHC property at a minimum price of $26,850,000, with the Receiver to be replaced by the Owner-Partnerships' management during this period. If the properties were not sold within

the nine-month period, the Owner-Partnerships would be required to make cash payments to HUD during the initial three-year period totaling $3,360,000 and, subsequently, to maintain a debt service schedule providing for full payment of the approximate $52,000,000 indebtedness. The foreclosure settlement agreement further provided for the immediate termination of the Receivership by joint motion, continued opposition to the Towers settlement agreement by HUD and Owner-Partnerships, and continued objections to the South Towers lease by Owner-Partnerships.

*United States v. Altman, supra,* 750 F.2d at 689–90. One day before this agreement was to be closed, the district court entered an order enjoining HUD from consummating this settlement. Thereafter, both HUD and Owner-Partnerships asked this court to reverse the district court's injunction order. We did so, and remanded with instructions to permit the parties to consummate the settlement agreement. *United States v. Altman, supra.*

Our mandate was issued on January 10, 1985. Pursuant to the terms of the settlement agreement, that meant that the closing date was January 31, 1985.

On January 28, 1985, after receiving a title report from Stewart Title Company, HUD notified Owner-Partnerships that it was terminating the settlement agreement pursuant to paragraph 41 of that agreement.[1] This paragraph states:

HUD represents that it has ordered from a title company a title report on the Leasehold Interest. Notwithstanding any other provision of this Agreement, *in the event that said title report discloses exceptions,* impediments or other clouds on title *which, in the opinion of HUD, cause said title to be unmerchantable, this agreement may,* at the option of HUD exercised prior to the

---

1. HUD also informed Owner-Partnerships that performance of the settlement agreement was impossible because the Mercantile litigation was not settled and that the purpose of the settlement agreement was frustrated by materially changed conditions. Because of our reliance on HUD's paragraph 41 termination, we need not determine whether these reasons also justified HUD's decision to not consummate the settlement agreement.

Closing Date, *be declared by HUD to be null and void and held for naught.* (Emphasis added). On the same day, Owner-Partnerships filed a motion to compel HUD to close and perform the settlement agreement on the closing date.

On February 14, 1985, the district court held a hearing on the motion. HUD relied on the following eight title problems as grounds for its termination of the agreement:

(1) the pendency of three lawsuits in Missouri state courts seeking damages for torts and employment discrimination relating to the operation of the Mansion House Towers;

(2) the pendency of litigation between the receiver and Towers;

(3) the uncertainty of the nature of the protection that the receiver will receive upon termination of the receivership;

(4) the pendency of the receiver's application to the district court for approval of a sublease of the South Tower;

(5) the possibility of new investors entering the picture through the South Tower sublease;

(6) the possibility that the cash requirements of the settlement agreement will be inadequate at closing;

(7) the uncertainty of the closing date; and

(8) the pendency of Mercantile's appeal from the district court's order concerning interest due on the Mercantile settlement.

Four of these eight problems (the first three and the last one) were listed as exceptions in the Stewart title opinion. Owner-Partnerships attempted to show that none of the eight problems affected title by producing a preliminary title binder from another title company which did not contain the eight exceptions relied on by HUD. In addition, Owner-Partnerships submitted an affidavit from an executive of that title company in which the executive expressed his opinion that the exceptions relied on by HUD did not render the title in question unmerchantable.

In ruling on Owner-Partnerships' motion to compel closing, the district court first recognized that the motion was "in the nature of an action for specific performance of a settlement agreement." 607 F.Supp. 392, 395. The court then interpreted paragraph 41 as permitting HUD to terminate the agreement only if "it believed in good faith that the title in question was unmerchantable." *Id.* The court added that "this inquiry must be made as of the time HUD decided to exercise ¶ 41 * * * [as] HUD's action must not be judged by hindsight." *Id.* Finally, in rejecting Owner-Partnerships' contention that HUD's termination decision was improper if title was in fact merchantable, the court observed:

The analogy to a contract for the sale of real estate is limited. Paragraph 41 is part of an agreement to settle real estate foreclosure litigation. In its broadest terms, the agreement allows HUD to attempt to sell the leasehold interests during a certain period for a certain price. If said effort fails, a workout agreement will take effect. Paragraph 41 gives HUD the option to act on its *own* opinion as to the merchantability of the title in question, because HUD is the party that will have to try to sell the property.

*Id.* at 395–96 (emphasis in original). The court then ruled that the first, second, and fourth title problems relied upon by HUD supported its finding that HUD had exercised the paragraph 41 termination option in good faith.

Owner-Partnerships' attempt to appeal the district court's ruling was dismissed by this court for lack of jurisdiction. Subsequently, HUD's action to foreclose went to trial. Owner-Partnerships' only defense was that HUD should be compelled to comply with the previously terminated settlement agreement. The district court rejected this defense for the same reasons previously given. The court also added that "subsequent developments that allegedly remove some of the title problems associat-

ed with the properties in question are now irrelevant to the affirmative defense asserted by the defendants." Memorandum Order, December 2, 1985. The court then ordered a foreclosure sale, but granted Owner-Partnerships a stay pending appeal without requiring a supersedeas bond.

## DISCUSSION

The district court's "good faith" standard for reviewing HUD's paragraph 41 termination is consistent with the terms of the parties' settlement agreement. The court's conclusion that HUD satisfied this good faith standard is a factual finding. It is subject to the clearly erroneous standard of review. As such, we may not "reverse the finding * * * simply because * * * [we might] have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Rather, we may only reverse the finding if " 'on the entire evidence * * [we are] left with the definite and firm conviction that a mistake has been committed.' " *Id. (quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

Our review of the evidence leads us to believe that HUD's reasons for exercising paragraph 41 were largely pretextual. At the time HUD entered into the settlement agreement with Owner-Partnerships, HUD was aware of the possibility that lawsuits might be pending at the time of closing,[2] that the dispute between Towers and the receiver might continue after closing, and that the receiver would have to be given some form of protection upon termination of the receivership. Furthermore, no *lis pendens* had been filed in either the state lawsuits or the Towers litigation, insurance covered at least two of the three state lawsuits, and, with respect to the Mercantile interest litigation,[3] there was enough cash in the court registry to satisfy the claim against the receiver and HUD had acknowledged its obligation to pay the funds which it was ultimately held responsible for. Finally, at least some of the problems relied on by HUD (such as a claimed uncertainty as to the closing date and the possibility that there would not be enough cash at closing time to satisfy Article XIII of the foreclosure agreement) clearly do not affect merchantability of the title in question.

A termination of the settlement agreement pursuant to paragraph 41, however, "rests on the 'opinion of HUD' and can be invoked 'at the option of HUD.' " 607 F.Supp. 392 at 395. At least some of the exceptions disclosed in the Stewart title report[4] and relied on by HUD could reasonably be considered to affect the merchantability of the title in question in the context of the parties' settlement agreement. Thus, the finding that HUD exercised its paragraph 41 option in good faith is not clearly erroneous.

Accordingly, we affirm.

---

**2.** In fact, paragraph 13(g) of the settlement agreement gave HUD the right to "induce such title insurance company to waive taking an exception to its insurance coverage by reason of a lawsuit or other proceeding brought against the Owner-Partnerships or HUD, or any of them, by a tenant or other party * * * in any way affecting the title to the leasehold interest." In short, HUD had a means of preventing such suits from being listed as a defect. But, as HUD observes, paragraph 13(g) was permissive; HUD was not *required* to indemnify a title insuror in order to induce it to waive an exception.

**3.** We resolved that litigation in *Rimmel v. Mercantile Trust Co. Nat'l Ass'n*, 774 F.2d 279 (8th Cir.1985).

**4.** We interpret paragraph 41 as permitting HUD to rely only on "exceptions, impediments or other clouds" which were disclosed in the Stewart title opinion. This reading knocks out all but the three state lawsuits, the Towers litigation, the receiver's protection, and the Mercantile interest litigation problems (listed as one, two, three and eight).